Certainly, yes, yes, you may. Okay. Ms. Dove, why don't you go ahead? I think counsel is settled now. Good morning, gentlemen, and good morning to Judge Hawkins. I have great sympathy. I'm getting some surgery this month myself, so I'm not looking forward. Ms. Dove, would you mind introducing yourself for the record, please? Yes, my name is Ellen Dove. I'm the attorney for the appellant, Chun-Mei Dodge. What happened to Chun-Mei Dodge in Sacramento County, she is the victim of corruption. It is corruption so bad, in my view, it smells down here. What happened to her was that a case was brought, no discovery occurred, a motion for summary judgment was brought. That was within a month of the answer. The prior counsel did not say this is premature. The judge made findings of fact without the proper information. Here we are now, those findings of fact are now findings of law. They are erroneous. I have one question on a factual issue. I couldn't quite tell. Did Ms. Dodge ever apply for a Sacramento Housing and Redevelopment Agency loan? That's a very interesting question. Here's the fact. This was not the process. We weren't at that stage. This was a purchase. She was purchasing the property with her own money. There was no reason to get a loan. Cyrus Yosefi was the only bidder who was asking to get public money to buy this property. Where does the government get the right to loan public money to a private individual for a private bid process? This is not a public purpose. This is not a government bidding out. He was not a competing applicant. She was not a competing applicant for the loan. Of course she wasn't at the SHRA commission meeting. She didn't know it was on the agenda. This whole process began with lies. The county people told lies. The SHRA employees told lies. And when those lies were brought before the court, even though they were disputed, the court accepted them. The court stepped into the role of finder of fact. That is not how the process is supposed to work. A motion for summary judgment is supposed to say, do we have a factual issue? If we do, we go to trial. We do not make decisions. We don't weigh the facts. We don't weigh the competing declarations to see whose version we like. That is not our judicial system. That's what happened here. There was a decision made in the early 90s to take the property away from the Dodge family. That decision was made in private without her knowledge. And everything that followed afterwards was to effectuate the decision, A, to take it away, and, B, to give it to another private individual to profit from. I understand your public taking argument. But wasn't she under a mortgage with the predecessor to Washington Mutual, and didn't she default? No. No. That is another one of the lies, Your Honor. She had an earlier situation where, to make a point, she didn't pay the mortgage. Her point was made. They went back. They renegotiated. She paid two and a half years after that under the agreed upon modification. Yes, it wasn't finalized, but it was agreed upon. The predecessor bank accepted her payments. When Home Savings came in, the first merger bank to come in, they claimed to lose the file. Then when they found the file, they returned her payments. They returned the payments. She was not a defaulting borrower. Let's not be mistaken about that. And that has been carried through. Everywhere we go now we hear foreclosure. She's been foreclosed upon. Why should we expect the bank to deal with her? This was an all-cash purchase. Her history or anybody's history makes no difference. She had money in her hand. She wanted to pay $1.2 million. They sold it for $925,000. There's no explanation for that other than the corruption that actually took place. In the intervening years, we've had an opportunity to learn about a number of things that went on. There's no other explanation when government officials lie to each other and lie to their commissioners and lie at Board of Supervisors meetings. There's no excuse for Muriel Johnson to pick up the phone and call the CEO of Washington Mutual and say, Reopen the bidding. You need to sell to our man. What is a supervisor involved in a private process? The only reason that any governmental interest was involved is because this building happens to be within what is known as a geographic area scheduled for redevelopment. This building was not the mess that you may have heard. You have color pictures in there of what this property looked like. It was a beautiful property. She was fixing it back up. It was scheduled by her for redevelopment. Why should someone else be allowed to buy the property and then take and do her same redevelopment plan? This is not like Costco, where they preferred, the city of Cyprus preferred, to have a Costco rather than the Cottonwood Church. This is the county of Sacramento preferring to have Cyrus Yosefi, the owner of this property, to make the profit rather than the Dodge family to be the owner to make the profit. That's what's going on here. A private taking by the government, with all the forces of the government arrayed against her and the tenants. They actually threatened the tenants and cited them. They cited them and said, If you don't move out, you're going to be arrested. Since when does the law enforcement jump in and help Washington Mutual evict tenants? I don't know where the world is coming to, Your Honor, if this case does not get back to a trial level. These abuses have got to be made public and they've got to be stopped. Counsel, you might want to reserve the remainder of your time. I do. Let's hear from the other side. And would you please let us know how you are going to allocate your time? We're going to try to split it up as evenly as possible, Your Honor. A total of ten minutes for your side. Your Honor, good morning. Tom Kreger for Sacramento Housing Redevelopment Agency. Elizabeth Wolf and Darren Brabowski. There is no the one fallacy that keeps coming up again and again brought forward by plaintiff is that it was somehow her property. It wasn't her property. It was foreclosed by way of a nonjudicial foreclosure in the Sacramento Superior Court. Pardon me. It was a nonjudicial foreclosure. Subsequently, Ms. Dodge. This is the Washington Mutual or the predecessor to Washington Mutual. Right. They foreclosed the property through a statutory process. It was a nonjudicial statutory process. Was Ms. Dodge permitted to redeem under those circumstances? They may be permitted to redeem, but they didn't do so. Subsequently, Washington Mutual's predecessor and Washington Mutual itself were forced to bring proceedings to evict her from the property because she refused to quit. She did not own the property at the time that the applications for redevelopment and such were going on. She didn't have a contract for sale with Washington Mutual. We keep bringing up this issue of a, quote, bidding process. There was no bidding process that she participated in. There's no evidence whatsoever anywhere in the record that she ever made a bona fide offer to Washington Mutual to purchase the property. The fact of the matter is, and is recognized by the court, Washington Mutual made a decision that we're not going to deal with this person, and the reason we're not going to deal with him because we had to previously foreclose upon her, we had to take unlawful detainer actions to get her out of our property because she refused to quit, and then she brought a bogus title action, which the superior court found was based on a fraudulently procured deed, which further delayed things. Washington Mutual was perfectly within its rights not to deal with Mrs. Dodge. With respect to the activities of Sacramento Housing and Redevelopment Agency, I would point out to your honors, and it's supported in the record, that Mr. Yosefi, who ultimately developed the property, had a substantial history of developing similarly successful projects for senior housing. And even if there had been a competition, even if Mrs. Dodge had gone to SHRA and said, I would also like to make an application for a loan. I would like to develop this property, which I don't own, but I want to develop this property for senior housing. Any proposal by her, even a hypothetical, as competing one against Mr. Yosefi, who had a long history of completing successful projects, SHRA could have reasonably decided to side with Yosefi. They had a history with him, and it was perfectly reasonable. So there would be no violation of any substantive due process or procedural due process rights. Your honor, I'm at approximately six minutes. I'm going to hand it over to the county of Sacramento. Very well. Thank you. Good morning, your honors. I'm genuinely interested to be here this morning. I'm Deputy County Counsel Keith Floyd for the Pelleas County of Sacramento, Muriel Johnson, and Lynn Davis. Just a couple of things Ms. Dove mentioned. She's talking about facts today. The things that she's talking about are not facts that were established to be genuine issues of material facts to enable her to move forward or Ms. Dodge to move forward on any of the claims that were made in the amended complaint. As far as the photographs that were submitted and the evidence, they're photographs from 1990 to 1995 that has nothing to do with the time period in question. The county did not ever receive any completed materials, nor did SHRA from Ms. Dodge for redevelopment assistance. There was some preliminary information that was received from the Dodge family that they were perhaps interested in participating in the redevelopment process, but they'd never completed anything. And as far as the county's action later to support Cyrus Yusefi's application for redevelopment assistance, that was certainly a rational decision on the county's part given the fact that he had a successful track record and Ms. Dodge had a history of material and substantial health and safety code violations while she was operating Dodge City Inn as a manager. Where are those facts established, the history of violations, for example? Your Honor, in a number of instances in the court found that those had been established. There was a declaration by Anthony Maiden that indicated the number of inspections that the county had made on the property going back over four months before Ms. Dodge was actually cited. The county had found over 170 rooms initially to be in violation in September, and then there were two subsequent violations, inspections, excuse me, after that. The county had found, are we talking about the order of August 20th, 02, by Judge Damrell? Yes, Your Honor. This is a motion for summary judgment. Normally we don't make findings of fact. Yes, but there is a finding in there, I believe, that says that the court had found that there was a history of substantial violations that were continuing on the property while Ms. Dodge was operating it. Which was not controverted? In other words, there were no material issues of fact? As a matter of fact, there is evidence in the record from Ms. Dodge, a letter that she wrote to the American River Fire District in February of 1999, which indicated that she herself acknowledged that there were continuing violations on the property and that she needed more time to deal with those, even though it had been four months since there had been original notice of violation. And at that time, in the letter that is in the record that was submitted by Ms. Dodge, it mentions that there are 150 rooms that needed to be re-inspected in the motel. All right. Thank you. Good morning. I'm Dave Cheit for Janet Johnson and Thomas Petruzzi, referred to in our briefs as the Washington Mutual Defendants. I just wanted to observe that the argument that I've heard this morning appears to be nothing more than yet another attempt to re-argue the judgment that was appealed previously, affirmed by this court in July of 2002, and a petition for re-hearing also filed and denied. I haven't heard anything today that calls for a response in terms of the appeal that's actually before the court today, so we're prepared to submit. Thank you, counsel. Ms. Love. You're correct. Those facts were not established. They were disputed. In fact, they were disputed. They are even the subject matter of additional litigation. Ms. Dodge was found not responsible as the party in interest. As you well know, she was foreclosed upon. They've already told you she didn't belong there. And now they're citing her and complaining that she didn't clean up a property that she didn't own. They can't have it both ways. She didn't own the property. She wasn't responsible. She actually, despite that, was trying to fix it up and was succeeding. And when she was succeeding is when they had to take greater action, because they needed to get her out because they wanted to have it belong to someone that would be more economically beneficial to them. She did not have any bad track record. She had an excellent track record, and the facts are in there. She ran other motels. She had a history of picking up bad motels and fixing them up. That's her track record. There should have been no findings of fact. That's what this problem is. There's findings of fact. Everything in there was disputed. She most certainly is very offended that her reputation has been besmirched. There were a number of occasions where she didn't even appear and she didn't even make a presentation and that there were findings against her. This is replete with her not having had an opportunity to be heard in court. Over and over, that's been the theme. By the way, those health and safety code violation allegations of Anthony Maiden were the subject matter of his testimony at the trial of the criminal trial on those charges, and the judge found her to be credible and him to be not credible. And I am now bringing up the issue that the photographs that they were using to indicate that there were some violations were doctored and were not even of the property at the time when they said. Are these the same photos that were referred to by Mr. Floyd? No. A moment ago? No, no. He was referring to the exterior and the interior photos of what the Dodge City Inn looked like when she was running it. It's true. She did pick it up in April of 1998 from someone else, and she was trying to fix it up. And by September, she hadn't finished fixing it up. And why should she be fixing it up? Because everyone knew it was going to be totally remodeled. They didn't make Washington Mutual clean these up. They didn't make Home Savings clean them up. This was, could you indulge me? Yes. Because I have three people to respond to. Well, I'll let you have just a little, a few more moments. Just bring your argument to a conclusion. Okay. It was a property that she owned previously. What she's complaining about here is she was not allowed in the bid process. She did make an offer. There's copies of the offers in the record. Washington Mutual declined her offers, not for the reasons that you've heard here, but because the county and SHRA put pressure on them. When the Board of Supervisors tells you, either you sell to our people or we're going to condemn it and make you have an extremely expensive toxic cleanup, and we're going to demolish and condemn it and you'll have nothing, you get them to act. And that's what happened here, and we need an opportunity to prove that. All right. Thank you. Thank you very much, counsel. Your time has expired. The case just argued will be submitted for decision, and we will hear argument in McDonald v. Domino's Pizza. Thank you.
judges: O'scannlain, Hawkins, Fisher